**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| LINDA KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV622-032 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Linda King seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB).

**I.   GOVERNING STANDARDS**

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm,

1

even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

*see also Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet

or medically equal a listed impairment. *Id.*
§ 404.1520(a)(4)(iii). If not, the ALJ must then determine at
step four whether the claimant has the [residual functional
capacity ("RFC")] to perform her past relevant work. *Id.* §
404.1520(a)(4)(iv). If the claimant cannot perform her past
relevant work, the ALJ must determine at step five whether
the claimant can make an adjustment to other work,
considering the claimant's RFC, age, education, and work
experience. An ALJ may make this determination either by
applying the Medical Vocational Guidelines or by obtaining
the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.
2015) (footnote added).

At steps four and five, the ALJ assesses the claimant's RFC and
ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d
1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds*,
20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, 2022 WL
3448090, at *1 (11th Cir. Aug. 17, 2022). RFC is what "an individual is
still able to do despite the limitations caused by his or her impairments."
*Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F.
App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination
based on all relevant medical and other evidence presented. In relevant
part, the RFC determination is used to decide whether the claimant can

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.   BACKGROUND

King was 47 years old when she applied for DIB in February 2020. Tr. 186-189.  She alleges a disability onset date of July 29, 2019.  Tr. 186. She completed high school.  Tr. 44.  She has past work experience as a corrections officer with the Georgia Department of Corrections.  Tr. 45, 190-91.   After a hearing, tr. 37-71, the ALJ issued an unfavorable decision, tr. 12-36.

The ALJ found that King's history of pulmonary embolism, anemia, obesity, depression, anxiety, and posttraumatic stress disorder (PTSD) constituted severe impairments,[1] tr. 18, but did not meet or medically equal a Listing, tr. 18-23.  The ALJ then found that King retained the RFC for light work except:

> the claimant never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, crouch, or kneel; never crawl; is limited to occasional exposure to environmental irritants such as fumes, odors, dusts, and gases; and, is limited to no use of moving machinery or exposure to unprotected heights.  The claimant's work is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production

---

[1]  The ALJ found King's hypertension and obstructive sleep apnea to be nonsevere. Tr. 18.

requirements, involving only simple, work-related decisions, and with few, if any, work place changes. The claimant is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting. The claimant can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day; with no interaction with the public, and with only occasional interaction with co-workers.

Tr. 23-29. King, he determined, could not perform her past relevant work, but could perform jobs that exist in significant numbers in the national economy. Tr. 29-31. Therefore, she was found to be not disabled. Tr. 31.

King appealed the ALJ's decision to the Appeals Council, which denied her request for review. Tr. 1-6. After exhausting her administrative remedies, she filed the instant lawsuit seeking judicial review of the ALJ's decision. *See generally* doc. 1. She argues the Commissioner's decision is not supported by substantial evidence, raising seven discrete issues. Doc. 11 at 3. The Commissioner responded that substantial evidence supports the ALJ's decision. *See generally* doc. 12. King replied in support of her arguments. *See generally* doc. 15. The matter is ripe for disposition. *See* Rule 5, Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) ("The action is presented for decision by the parties' briefs.").

## III.  ANALYSIS

King argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to account for her difficulties leaving the house, doc. 11 at 12-13, improperly relied on solitary personal activities, *id.* at 13-15, improperly relied on partially benign mental status exams, *id.* at 15-16, improperly relied on supposed improvement, *id.* at 16-17, improperly relied on "conservative" treatment, *id.* at 17-20, erroneously discounted an opinion from Statesboro Psychiatric Associates, *id.* at 21-25, and "made various other errors," *id.* at 20.  The Acting Commissioner's response logically consolidates these issues into three categories, arguing: (1) that substantial evidence supports the ALJ's subjective symptom evaluation, doc. 12 at 6-12; (2) that substantial evidence supports the ALJ's evaluation of the opinion evidence, *id.* at 12-17; and (3) that the ALJ appropriately accounted for King's mental impairments in formulating her RFC, *id.* at 17-23.  The Court follows the same approach.

### A.   Plaintiff's Subjective Symptoms

Plaintiff argues the ALJ improperly relied on her solitary personal activities, partially benign mental status exams, "supposed

6

improvement," and "conservative treatment" in evaluating her subjective reports.  Doc. 11 at 13-20.  She argues any one of these issues supports remand.

When a claimant provides testimony concerning her or his subjective symptoms, the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the record shows the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work" in light of the objective medical evidence and statements by the claimant and their doctors.  *See Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)-(2)).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

The ALJ followed this rubric when analyzing Plaintiff's subjective complaints. *See* tr. 23-29. He acknowledged her testimony about her "extreme fearfulness and paranoia, agoraphobia, heightened suspicion, hypervigilance, regular crying spells and panic attacks, feelings of being overwhelmed, acute anger response, general emotional instability, and reported inability to interact appropriately with supervisors or abide by a strict work schedule." Tr. 24. However, he found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ's determination is supported by substantial evidence.

Related to King's mental functioning,[2] the ALJ discussed her medical records in depth, tr. 26-27, and found that the records indicate the Plaintiff "has maintained grossly intact and stable physical, cognitive, and emotional functioning throughout the entirety of the documented period with the benefit of what appears to be largely routine and conservative medication management," *id.* at 29. *See also* tr. 27

---

[2] As the Acting Commissioner points out, *see* doc. 12 at 7 n.3, Plaintiff only challenges the ALJ's evaluation of her mental functioning. *See generally* docs. 11 & 15.

(noting the majority of Plaintiff's mental health records reveal her presentation with "wholly normal and stable hygiene, speech, thought processes, thought content, orientation, perception, insight, judgment, memory, attention, and concentration" and that "the claimant herself admitted to gross improvements in her mood and sleep patterns" after minimal adjustments to her medication). He also found that Plaintiff's "activities of daily living persuasively indicate that she retains the ability to perform a light range of simple work-related tasks," specifically noting her ability to prepare basic meals, use a computer and smart phone, pursue some limited hobbies, understand and follow medical instructions, and interact normally with her medical providers. Tr. 29. He also cited to a March 2020 Function Report where King reported she could drive to her mailbox, drive to a local school to pick up her son, and go shopping in stores approximately once a month. *Id.* (citing tr. 241-48).

Plaintiff criticizes the ALJ's analysis of her medical records in discounting her subjective symptoms, arguing his reliance on "partially benign mental status exams," "supposed improvement," and "conservative treatment" is improper. Doc. 11 at 15-20. As pointed out below, Plaintiff relies on abrogated cases applying the now-defunct

"treating physician rule" to support her arguments. *See, e.g.*, doc. 11 at 15 (citing, *inter alia*, *Castro v. Berryhill*, 783 F. App'x 948, 956-58 (11th Cir. 2019); *Meade v. Comm'r of Soc. Sec.*, 807 F. App'x 942, 948 (11th Cir. 2020)). Not only have the cases been abrogated, but they consider an ALJ's use of benign evaluations and limited improvement to discount a treating physician's opinion, not their value in analyzing a claimant's own subjective allegations of disability. The Eleventh Circuit has recognized that conservative treatment and improvement are appropriate to consider in analyzing a claimant's subjective testimony. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 865 (11th Cir. 2011) (approving ALJ's consideration of a "conservative treatment plan" in discounting the plaintiff's subjective assertion of pain).

Plaintiff also argues that the ALJ's reliance on her activities of daily living was improper since she characterizes these as solitary activities that are not evidence of an ability to sustain an 8-hour workday. Doc. 11 at 13. As the Acting Commissioner points out, doc. 12 at 11, the ALJ identified Plaintiff's self-reported activities that include interactions with others. He described her "using a computer and smartphone," tr. 29, and referred to her function report where she describes texting and video

chatting with her grandchildren, talking to her husband and children, and going out to doctors' appointments, tr. 274. He also referred to another functional report where she indicated she occasionally shopped in stores. Tr. 29 (citing tr. 240-248). The ALJ appropriately considered King's "activities of daily living" in evaluating her subjective symptoms. *See* 20 C.F.R. §§ 404.1545(a)(3); 404.1529(a).

King relies, in part, on the Eleventh Circuit case *Schink v. Commissioner of Social Security*, 935 F.3d 1245, 1266 (11th Cir. 2019),[3] to support her argument to the contrary. In *Schink*, the Court addressed the ALJ's determination that the claimant's mental impairments were not severe at the first step of the evaluation process. *Id.* at 1264-65. At that stage in the evaluation, a different standard applies: "an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1265 (internal citation and quotations omitted). "Based on these

---

[3] As this R&R makes clear, *Schink* is one of many cases Plaintiff relies upon that has been abrogated by regulation since it applies the prior "treating physician rule." *See* 935 F.3d at 1259-64. However, Plaintiff also cites *Schink* for its analysis of an ALJ's consideration of a claimant's mental impairments. *See* doc. 11 at 14 (citing *Schink*, 935 F.3d at 1266). The abrogation does not impact its holding relative to that issue.

standards," the Eleventh Circuit found that the ALJ's conclusion that the claimant's mental impairments were not severe was not supported by substantial evidence. *Id.* The record showed that the claimant had a "non-trivial personality disorder," with evidence that he "was argumentative and combative with others, regularly harbored revenged fantasies, and even described wanting to kill his neighbor," and had "impulsive and irascible tendencies" and "[a]nger, mania, depression, and conflicted interpersonal relationships." *Id.* Therefore, his ability to "feed and clothe himself, walk a dog, and watch television" did not support the ALJ's finding of non-severity. *Id* at 1266.

Here, in contrast, the ALJ considered Plaintiff's self-reported activities in contrast with her allegations of disabling limitations when determining her RFC. *See* tr. 29. In *Schink*, the Eleventh Circuit remanded the case, in part, because the ALJ failed to consider any of the claimant's mental conditions in his RFC assessment. 935 F.3d at 1269. That case is, therefore, not as instructive as Plaintiff asserts. Moreover, the ALJ's weighing of the credibility of Plaintiff's subjective testimony is not "clearly wrong," even if reasonable minds could differ as to its persuasiveness. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939

(11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## B.   Opinion Evidence

Plaintiff challenges the ALJ's consideration of the opinions of state agency consultants Dr. Hughes and Dr. Koretzky, doc. 11 at 21, and his consideration of the opinion of an unknown Statesboro Psychiatric Associates staff member, *id.* at 21-25.  The ALJ found Drs. Hughes and Koretzky's opinions to be persuasive.  Tr. 22.  Plaintiff criticizes the ALJ's weighing of the agency consultants' opinions based on now-abrogated Eleventh Circuit precedent that "the opinion of a non-examining consultant is not substantial evidence on which to reject the opinion of a treating or examining doctor or to support an administrative decision." Doc. 11 at 21 (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). The ALJ found the unknown SPA staff member's opinions to be unpersuasive.  Tr. 27-28.  Plaintiff criticizes this determination, too, arguing it is based on incorrect reasoning.  Doc. 11 at 23-25.

For claims filed after March 27, 2017, as here, the ALJ will not defer or give any specific weight to medical opinions or prior administrative

medical findings.  20 C.F.R. § 404.1520c(a); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896-98 (11th Cir. 2022) (affirming the new regulations that eliminate the treating physician rule for claims filed after March 27, 2017).[4]  Under the applicable regulation, to determine the persuasiveness of a medical opinion or prior administrative finding in the record, the ALJ focuses on factors that include supportability, consistency, the medical source's relationship with the claimant, and the medical source's specialization.  20 C.F.R. § 404.1520c(c).  The new regulations differentiate between a "medical opinion," defined as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) . . . ," 20 C.F.R. §§ 404.1513(a)(2) (defining "medical opinion"); 416.913(a)(2) (same), and "other medical evidence,"

---

[4]  Plaintiff does not grapple with the application of the new regulation to her claims; instead, she cites cases throughout her briefs that apply the prior version of the so-called "treating physician rule."  *See generally* doc. 11 (citing, *inter alia*, *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021); *Walker v. Bowen*, 826 F.2d 996, 1000-01 (11th Cir. 1987); *Martz v. Comm'r of Soc. Sec.*, 649 F. App'x 948, 959 (11th Cir. 2016); *Mace v. Comm'r of Soc. Sec.*, 605 F. App'x 837, 842 (11th Cir. 2015)).  Even after the Acting Commissioner pointed out the applicability of the new regulations and the resulting impact on prior Eleventh Circuit precedent, Plaintiff reaffirmed her reliance on those cases, observing that "[t]here is little difference between the old and new regulations, and any differences do not matter to these cases' applicability to our facts."  Doc. 15 at 2.  The Eleventh Circuit has considered this argument and disagreed, expressly finding that "[b]ecause section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates out earlier precedents applying the treating-physician rule."  *Harner*, 38 F.4th at 896.

which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," 20 C.F.R. §§ 404.1513(a)(3) (defining "other medical evidence"); 416.913(a)(3) (same).

The Eleventh Circuit has recently summarized the effect of the 2017 amendments to the SSA's regulations. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

> This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. Under the new regulations an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. [20 C.F.R.] § 404.1520c(c)(1)-(5).
>
> The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical

opinion(s) or prior administrative medical finding(s) will be."
*Id.* § 404.1520c(c)(2).

*Id.* As for the two most important factors, "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

The ALJ specifically applies these factors when analyzing the persuasiveness of each of the three challenged opinions. Tr. 22, 27-29. He found Drs. Hughes and Koretzy's opinions to be persuasive, despite not independently examining Plaintiff, because they are consistent with the medical evidence of record, well-supported, and not contradicted elsewhere in the record. Tr. 22. By contrast, he found the SPA staff member's opinions unpersuasive because they were not "supported by any concurrent medical reasoning," and "highly inconsistent and unsupported with the medical record." Tr. 27. He observed that "[n]o other medical professional of record has observed or remarked upon such extreme psychological dysfunction commensurate with the individual described above." Tr. 28. Plaintiff's citation to now-abrogated authority

does not diminish the ALJ's correct application of the new regulatory framework and offers no basis for remand.

## C.    Plaintiff's RFC

Notwithstanding his discounting of Plaintiff's allegations of disabling limitations, the ALJ articulated a RFC for Plaintiff that included limitations "in light of [her] depression, anxiety, [and] posttraumatic stress disorder" including a restriction to work involving "simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, work place changes; learning of simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; performing simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day; no interaction with the public; and, only occasional interaction with co-workers." Tr. 29.  Substantial evidence supports this finding.  *See* tr. 26-29.

Plaintiff argues the ALJ committed reversable error by "neglecting to consider [her] inability to leave home."  Doc. 11 at 13.  She identifies portions of the record in which she reported that she had problems

leaving her home.  Doc. 11 at 12 (citing tr. 53-56, 241-42, 244, 261, 265, 271-74).   She also identifies records from Statesboro Psychiatric Associates ("SPA") which include notes of her self-reported difficulty leaving home.  *Id.* (citing tr. 450, 454-55, 609, 613, 617, 621, 779, 783, 787).   Contrary to Plaintiff's assertion, the ALJ ***did*** consider her agoraphobia and anxiety around leaving her home in formulating her RFC.  *See* tr. 24 (citing tr. 37-71 (hearing transcript)); tr. 26 (citing tr. 454, 458-61); tr. 27 (citing tr. 794-95).

Plaintiff cites to *Sharpe v. Commissioner, Social Security Administration*, 2022 WL 152229 (11th Cir. Jan. 18, 2022), to support her argument that the ALJ's decision is not based on substantial evidence. *See* doc. 11 at 11-13.  In *Sharpe*, the Eleventh Circuit remanded the case to the Commissioner because the ALJ's assessment of the plaintiff's RFC was not supported by substantial evidence.  2022 WL 152229, at * 7. Although the evidence showed that the plaintiff "left his home no more than a dozen times" over a six-year period and "was unable to interact with anyone outside of his immediate family," even skipping his child's high school graduation and his father's funeral, the ALJ found that he occasionally could interact with a supervisor or coworkers. *Id.* at *6.  The

18

ALJ based the determination on a report "that reflected only that Sharpe stated that when he retired from the Navy, six years earlier, he had discrete periods of anxiety that occurred when he was in large groups of people." *Id.* (internal citation, quotation, and alteration omitted). The Eleventh Circuit noted that, even if the report supported an inference that at the time Sharpe retired he remained able to occasionally interact with smaller groups of people like coworkers or supervisors, it did not support the conclusion that he remained able to do so six years later, during the relevant time. *Id.* Therefore, the record did not contain evidence "that a reasonable person would accept as adequate to support the conclusion that Sharpe was able to have occasional interaction with supervisors and coworkers in a working environment." *Id.* at *7.

King's case is distinguishable from Sharpe's. The ALJ cited to King's self-reported ability to interact normally with her medical professionals. Tr. 29 (citing tr. 240-257; 269-277). He relied on her function reports that reveal she leaves the home, albeit occasionally, to shop, collect the mail, and pick up her son from school. *Id.* (citing tr. 244-45). The ALJ acknowledged Plaintiff's complaints of agoraphobia, found her subjective reports to be inconsistent with the record, and formulated

an RFC that accounted for her mental impairments. *Id*. As explained above, that the record could support a different finding is not enough to reject the ALJ's conclusion. *See Adefemi*, 386 F.3d at 1027.

## IV.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 25th day of August, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA